# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

JOHN GLASSMAN, as Curator of
The Estate of James Bryan Chestnut,
Deceased,

      Plaintiff,

v.                                    Case No.: 3:24 CV 100

OKALOOSA COUNTY, FLORIDA,
JAMES FILPI, individually,
CLINTON COLBERT, individually,
STANLEY CHOPP, individually,
DERRICK HOPKINS, individually,
RICHARD PINKHAM, individually,
FELIX ZULLO, individually,
STEVEN BARCELO, individually,
and, ZACHARY MILLER, individually,
CHS TX, INC. D/B/A YESCARE, a
foreign corporation,
NICHOLAS DELGADO, M.D., and
DANIELLE COOK, RN,

      Defendants.
_____/

## DEFENDANTS' MOTION TO STRIKE
## PLAINTIFF'S "REBUTTAL" EXPERT WITNESS

     Defendants **OKALOOSA COUNTY, FLORIDA, JAMES FILPI,
CLINTON COLBERT, STANLEY CHOPP, DERRICK HOPKINS,
RICHARD PINKHAM, FELIX ZULLO, STEVEN BARCELO,** and
**ZACHARY MILLER**, by and through undersigned counsel, and pursuant to *Fed.*

*R. Civ. P.* 37(c)(1), hereby move to strike Plaintiff's expert witness Donald L. Leach, II (hereinafter "Leach"). Leach is Plaintiff's affirmative expert witness who is masquerading as a rebuttal witness in a thinly veiled attempt to resuscitate the Plaintiff's case after he failed to timely disclose an affirmative expert witness on the issue of liability regarding the County Defendants. In support thereof, the Defendants state as follows:

## FACTUAL BACKGROUND

1.     James Chestnut ("Chestnut") died while in the custody of Defendant Okaloosa County at the Okaloosa County Jail. [Doc. 44 at p. 2].

2.     As the Curator of Chestnut's Estate, John Glassman ("Plaintiff") brought suit against Okaloosa County, as the operator of the Jail, and against eight of its correctional officers, none of whom were medical or nursing staff. *Id.* (Okaloosa County and its eight individually named correctional staff are hereinafter referred to collectively as "County Defendants").

3.     Plaintiff brought negligence claims against all the County Defendants. *Id.* at pp. 31-42. Plaintiff also brought §1983 claims against the eight individually named correctional officers. Plaintiff contends they were deliberately indifferent to Chestnut's medical needs and violated his Fourteenth Amendment rights. *Id.* at pp. 18-31.

4.    Plaintiff also asserted wrongful death claims against CHS TX, Inc. (d/b/a YesCare), which contracted with the Jail to provide medical services to jail inmates, and against two of YesCare's medical employees, Nicholas Delgado, MD, and Danielle Cook, RN (hereinafter referred to collectively as "Medical Defendants)." [Doc. 44 at pp. 42-47].

### *Plaintiff's Medical Experts*

5.    On August 15, 2024, Plaintiff served his Rule 26(a)(2) expert witness disclosures and identified Arthur M. Fournier, MD, and Susan Minter, DNP, ARNP, as his two medical experts.[1] [*See* Exhibit A]. Plaintiff identified both Dr. Fournier and ARNP Minter as experts to testify about the standard of care of the Medical Defendants.  Fournier and Minter each testified that the Medical Defendants were negligent, and their care of Chestnut fell below the prevailing professional standard of care for a reasonably prudent similar healthcare provider. [*See* Exhibit B and C].

6.    Plaintiff clearly did not offer either Fournier or Minter to render an opinion as to the liability and standard of care of the non-medical County Defendants.  Instead, their opinions and testimony were strictly limited to the liability and standard of care of the Medical Defendants.

---

[1]Plaintiff served but did not file his disclosures as required by the Initial Scheduling Order issued by this Court. [Doc. 24 at ¶ 9(c)]("The parties shall file the Rule 26(a)(1) and (a)(2) disclosures (without any attachments) . . . no later than 7 days from the date the disclosure is served on the opposing party.").

7.    Nurse Minter testified:

Q.    Your opinions regarding negligence in the care and treatment rendered to Mr. Chestnut are strictly limited to the nursing staff employed by YesCare, correct?
A.    Correct.
Q.    And so you are not opining that any employee of Okaloosa County or the county itself was negligent in their interactions with Mr. Chestnut, correct?
A.    Correct.

[Ex. B at page 19, lines 9-17].

8.    Similarly, Dr. Fournier testified:

Q.    Would you agree that your opinions regarding negligence in the care and treatment rendered to Mr. Chestnut are strictly limited to the medical staff employed by YesCare and YesCare?
A.    Yes.
Q.    You are not opining in this case that any employee of Okaloosa County or the county itself was either negligent or deliberately indifferent in their interactions with Mr. Chestnut, correct?
A.    I have no expert opinions on their, their I wouldn't say care, but their services.

[Ex. C at page 34, lines 8-20].

9.    In short, Plaintiff did not disclose a single expert to render any type of opinion as to the standard of care appliable to any of the non-medical/non-nursing County Defendants or that they were deliberately indifferent to the medical needs of Chestnut in violation of his Fourteenth Amendment rights.

### ***County Defendants' Expert***

10.    On October 7, 2024, the County Defendants timely served and filed their Rule 26(a)(2) disclosures, and identified Richard M. Hough, PhD, CCP,

CHCHP, SHRM-SCP, as their expert to render an opinion regarding the County Defendants' supervision of Chestnut during his incarceration. [Doc. 69 at p. 2].

11.    Dr. Hough opined that nothing the County Defendants did or did not do caused or contributed to Chestnut's death. [Doc. 72-4 at p. 2]. Hough further opined that none of the individually named corrections officer Defendants were deliberately indifferent to the medical needs of Chestnut. *Id*.

### *Plaintiff's "Rebuttal" Expert*

12.    For the first time, on November 19, 2024, Plaintiff disclosed an expert witness directed at the County Defendants and identified Leach as his "rebuttal" expert. [*See* Exhibit D]. Though Leach is critical of Dr. Hough's report because he did not have certain materials available to him at the time he authored his initial report (which he now has and is preparing a supplemental report), his "rebuttal" stops there.

13.    Instead, Leach's report is unquestionably written as an affirmative report to opine on the issues that Plaintiff must establish in his case in-chief, such as the standard of care for corrections officers, whether their interactions with Chestnut fell below that standard, and whether their actions/inactions constituted deliberate indifference to the medical needs of Chestnut in violation of his Fourteenth Amendment rights.

14.    Indeed, completely unrelated to any opinions of Hough, Leach's report sets forth a lengthy analysis of what a "reasonable correctional administrator" would and should have done as it relates to Chestnut, including:

Adherence to Protocols:  Medical protocols must be clearly outlined, updated regularly, and aligned with legal standards and medical best practices.  They should be accessible to all relevant staff and integrated into the daily operations of the facility.

Timeliness of Care:  The provision of timely care is critical in a correctional environment to prevent medical conditions from worsening.  Procedures should be in place to ensure quick response times and efficient escalation processes for medical issues.

Collaboration Between Medical and Custody Staff:  Effective communication and collaboration between medical staff and custody personnel are essential to manage healthcare needs and maintain security. This includes understanding each other's roles and responsibilities in providing patient care while ensuring safety within the facility.

Training and Supervision:  Regular training should be provided to educate staff on medical procedures, emergency responses, and changes in protocol. Continuous supervision and audits can help maintain a high standard of care and adherence to expected practices.

Documentation and Accountability:  Accurate documentation of medical interventions and incidents ensures transparency and accountability. This not only aids in ongoing care but also provides a record of the care provided.

[Exhibit D at p. 25].

15.    Leach then goes on to apply such standards of care to the interactions several Defendant corrections officers had with Chestnut to conclude that their care fell below the standard of care. Leach opined that:

> [a] reasonable correctional administrator requires officers to report if
> they see an inmate in physical distress.  So when Officer Colbert and
> Officer Filpi observed Mr. Chestnut speaking in a way that did not
> make any sense, nor moving around his cell as one typically sees
> inmates do during the daylight hours, a reasonable correctional officer
> would have taken these as signs of a possible physical distress and not
> simply blow it off as a "mental event.

[Exhibit D at pp. 43-44]. This commentary does not rebut Hough's report; rather, it is an affirmative opinion about the burden of proof Plaintiff bears at trial.

16.    Leach's expert testimony clearly strikes at the core of Plaintiff's case, i.e., *affirmative* expert opinion testimony that is necessary for Plaintiff to satisfy his burden of proof.  Leach opines on the prevailing professional standard of care and then lays out how each named defendant fell below that standard of care and were deliberately indifferent to Chestnut's medical needs. That is a classic textbook example of an affirmative expert witness.

17.    Absent the testimony of Leach, Plaintiff is unable to satisfy his burden of proof in this case as to the County Defendants.  Simply wrapping up and labeling an affirmative expert witness as a "rebuttal" expert witness does not save the day for failing to disclose the expert witness by the deadline set forth by this Court's Initial Scheduling Order.  Plaintiff's Rule 26(a)(2) disclosure deadline has long passed, and Plaintiff cannot now be allowed to present an expert for the first time on an issue for which he has the ultimate burden at trial by casting Leach as a "rebuttal" expert.

## MEMORANDUM OF LAW

Courts "are not hesitant to exclude or substantially limit expert opinion testimony at trial when an expert is masquerading as a rebuttal expert because the attorney missed the deadline for expert witness disclosures and tried to cure that mistake by strategically and incorrectly attaching the 'rebuttal expert' designation to the tardily-disclosed expert." *Kroll v. Carnival Corp.*, 2020 U.S. Dist. LEXIS 147781, at \*13 (S.D. Fla. Aug. 17, 2020) *citing Flamingo South Beach I Condo. Ass'n, Inc., v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 21-26 (11th Cir. 2012) (upholding order striking a purported rebuttal expert report because it was not "solely in rebuttal" to the opposing party's expert); s*ee also Demetrius Cross v. Johnson*, 2023 U.S. Dist. LEXIS 228386, at \*4-6 (S.D. Fla. Dec. 22, 2023) ("Well's report is clearly written as an affirmative report addressing issues that Plaintiff must establish in his case in-chief and as such, it is clear that Wells is an affirmative expert masquerading as a rebuttal expert.").

And that is exactly the case here.

A rebuttal expert's task is different from that of an affirmative expert, *Navelski v. Int'l Paper Co*., 244 F. Supp. 3d 1275, 1302 (N.D. Fla. 2017), and "[f]ederal courts routinely strike expert reports or exclude expert testimony which is not timely disclosed, even if the consequence is to preclude a party's entire claim or defense," *Kroll* at \*11 citing *Santiago-Diaz v. Laboratorio Clinico y de*

*Referencia del Este*, 456 F.3d 272, 277-78 (1st Cir. 2006) (affirming preclusion order even though the result was to exclude evidence critical to plaintiff's claim). In addition, courts provide similar consequences when an initial expert is designated late, as a purported rebuttal-type expert. *Kroll at \*11.* Preclusion is an appropriate sanction for a failure to comply with the witness disclosure requirements. *See* Fed. R. Civ. Pro. 37(c)(1). Where a party attempts to designate as a "rebuttal" expert someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be stricken by the Court for violating Rule 26(a) and the Court's governing scheduling order. *Kroll* at \*12.

The first time Plaintiff disclosed a witness relevant to whether any of the County Defendants were deliberately indifferent and/or negligent was when Plaintiff disclosed Leach on November 19, 2024, which was more than three months after his Rule 26(a)(2) deadline set forth in this Court's Initial Scheduling Order.

"A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Kroll* at 9. When the Court's scheduling order addresses expert witness disclosures, "such discloses [sic] must be made at the time and in the sequence directed by the court." *Id.* (quotation omitted).

In sum, to modify a popular proverb:

[I]f an expert does not act like a rebuttal expert, does not appear to be a rebuttal expert, does not write like a rebuttal expert, and does not

actually rebut an opposing expert, then he must not be a rebuttal expert. Alternatively, if an expert acts like a direct expert, appears like a direct expert, writes like a direct expert, and provides expert opinions which do not rebut the opponent's expert because they are direct, affirmative opinions, then he must be a direct expert.

*Kroll* at *19.

Leach is not a bona fide rebuttal expert. Rather, his report contains affirmative opinions necessary for Plaintiff's case in chief, and as such, Leach must have been disclosed as an affirmative expert witness by August 15, 2024.  Plaintiff failed to disclose him by the designated deadline. Striking Leach as Plaintiff's expert is warranted.  See *e.g. Jetport, Inc. v Landmark Aviation, LLC*, 2017 U.S. Dist. LEXIS 228485, 2017 WL 7732868, at *8 (S.D. Fla. July 11, 2017) (striking all six of Plaintiff's experts and rejecting Plaintiff's effort to salvage the experts by calling them rebuttal experts).

In the alternative, to the extent the Court does not strike Leach as Plaintiff's expert, the County Defendants' respectfully request the Court not allow Leach to testify during Plaintiffs' case-chief in the trial of this matter and to limit Leach's testimony to rebut *only* the portion(s) of Dr. Hough's opinion as it pertains to Defendants Filpi and Colbert.

**WHEREFORE**, based on the foregoing, the County Defendants respectfully request the Court issue an order striking Donald L. Leach as Plaintiff's expert and/or granting any other relief deemed just and appropriate.

Respectfully submitted this 6th day of February 2025.

/s/ Lisa B. Fountain
**LISA B. FOUNTAIN**
Florida Bar No. 0948802
**GREGORY T. STEWART**
Florida Bar No. 203718
**ELMER C. IGNACIO**
Florida Bar No. 537683
**NABORS GIBLIN & NICKERSON**
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
Telephone: (850) 224-4070
Facsimile: (850) 224-4073
lfountain@ngnlaw.com
gstewart@ngnlaw.com
eignacio@ngnlaw.com
legal-admin@ngnlaw.com

*Attorneys for County Defendants*

## CERTIFICATE OF CONFERRAL

The undersigned certifies that pursuant to Rule 7.1, N.D. Fla. Loc. R., Defendants' counsel conferred with Plaintiff's counsel who opposes the relief requested in this motion.

/s/ Lisa B. Fountain
**ATTORNEY**

## <u>WORD COUNT</u><br><u>CERTIFICATION</u>

This document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F), and contains 2,192 words, which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

*/s/ Lisa B. Fountain*
**ATTORNEY**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies on this 6th day of February 2025, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Northern District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Lisa B. Fountain*
**ATTORNEY**